**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
In re:                                                                                         Chapter 11
BC FUNDING, LLC
D/B/A BANKCARD FUNDING,                                              Case No. 12-71471 (REG)

                                Debtor.
------------------------------------------------------------------X
BC LIQUIDATING, LLC,

                               Plaintiff,                                     Adv. Proc. No.: 8-14-08082-reg

                                v.

LLOYD J. WEINSTEIN, THE WEINSTEIN GROUP, P.C.,
KAREN SHARF, HUNT ASHLEY GROUP, INC,
sometimes doing business as SECRET GARDENS,
SAMANTHA SHARF, MITCHELL C. ELMAN,
THE LAW OFFICES OF MITCHELL C. ELMAN, P.C.,
TIX GROUP, LTD., MERCY ROMAN, COMPLAINT
ANDREW MUHLSTOCK, MUHLSTOCK &
ASSOCIATES, CPA'S, PLLC, ERICA ABRAMSON,
as TRUSTEE OF BC FUNDING HOLDINGS TRUST,
BC FUNDING HOLDINGS TRUST, and ERICA
ABRAMSON, as TRUSTEE of THE BARRY SHARF
2002 TRUST and THE BARRY SHARF 2002 TRUST,

                                Defendants.
------------------------------------------------------------------X
LLOYD J. WEINSTEIN and THE WEINSTEIN
GROUP, P.C.,

                               Third-Party Plaintiffs,                    Third-Party Complaint

                                v.                                                         Adv. Proc. No.: 8-15-      -reg

STEVEN KAHN, KENNETH ALPART, HARRISON
TRADING INVESTMENTS, LLC and MICHAEL
O'GORMAN,

                                Third-Party Defendants.
------------------------------------------------------------------X

## THE PARTIES

1. Third party plaintiff, Lloyd J. Weinstein ("Weinstein") is an attorney practicing law in the Courts of the State of New York maintaining a residence in the State of New York.

2. Third party plaintiff, The Weinstein Group, PC ("TWG") is a professional corporation law firm with a principal place of business in the State of New York, organized and existing pursuant to the laws of the State of New York.

3. Weinstein and TWG, unless individually referenced, are hereinafter collectively referred to as the "Weinstein Parties" or the "Third Party Plaintiffs."

4. Weinstein and the attorneys and staff of TWG were outside counsel to BC Funding, LLC.

5. Third party defendant, Steven Kahn ("Kahn") is an individual residing in the State of New York.

6. Kahn served as the Chief Financial Officer and on-site Certified Public Accountant to BC Funding, LLC, with complete and unfettered access to all of the financial books and records of BC Funding, LLC as well as complete and unfettered access to all of BC Funding, LLC's prior and current accountants and accounting professionals.

7. Third party defendant, Kenneth Alpart ("Alpart) is an individual residing in the State of New York.

8. Third party defendant, Harrison Trading Investments LLC ("HTI") is, and at all relevant times was a limited liability company organized and existing under the laws of the State of Illinois currently maintaining an office at 160 6th Avenue, No. 2, New York, New York 10013.

9. At all relevant times, Alpart has been the sole owner and member of HTI.

10. At all relevant times, Alpart and/or HTI had complete and unfettered access to all of the financial books and records of BC Funding, LLC as well as complete and unfettered access to all of BC Funding, LLC's prior and current accountants and accounting professionals.

11. HTI is an owner of 40% of the equity in BC Funding, LLC's parent entity, BC Funding Holdings LLC, a Nevada limited liability company ("BC Holdings").

12. Third party defendant, Michael O'Gorman ("O'Gorman") is a certified public accountant who performed in-house accounting services for the benefit of BC Funding, LLC at the direction of Alpart and Barry Sharf ("Sharf") from approximately June, 2011 through March, 2012.

13. Upon information and belief, O'Gorman was paid by BC Funding, LLC.

14. Sharf is an individual residing in the State of New York.

15. Sharf was the Managing Member, Chief Executive Officer and sole decision maker for BC Funding, LLC d/b/a Bankcard Funding ("BCF") from the date of its inception to the date of its filing for bankruptcy including making the unilateral decision for BCF to declare bankruptcy.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. section 1334 as this Third-Party Complaint relates to the following bankruptcy case pending in this Court: BC Funding, LLC, Ch. 11 Case No. 12-71471-reg and adversary proceeding: BC Liquidating, LLC v. Lloyd J. Weinstein, *et al.*, Adv. Proc. No.: 14-08082 (REG) (the "BC Liquidating Litigation").

17. In this regard, as described more fully below, the outcome of this proceeding could conceivably have an effect on the BCF estate and/or affect the rights and liabilities of BCF.

18. Venue of this proceeding is properly laid in the Eastern District of New York pursuant to 28 U.S.C. section 1409.

## FACTUAL ALLEGATIONS

19. BCF was a company formed to provide short term cash advances to merchants in need of cash. Upon information and belief, BCF purchased future credit card receivables from various merchants in the form of an up-front payment, and in return, BCF would receive an assignment of the merchant's future credit card and other receivables ("Deals").

20. TWG and the attorneys thereof, including Weinstein, were merely services providers and outside counsel for BCF, with services primarily focused on contract writing and editing and debt collection.

21. TWG and the attorneys thereof, including Weinstein, provided services to BCF pursuant to the terms of an agreement.

22. Neither TWG nor Weinstein were involved in the day-to-day management of BCF, the hiring or firing of personnel, decision-making or other management or controls of BCF.

23. Neither TWG nor Weinstein were involved in the determination to accept or decline any proposed Deals.

24. Neither TWG nor Weinstein were involved in the underwriting or other financial review of any proposed Deals.

25. Neither TWG nor Weinstein had access to any of the financial statements, accounts or other financial information of BCF or for any proposed Deals.

26. Neither TWG nor Weinstein had access to the accounting software of BCF, or any knowledge of the finances of BCF.

27. The Weinstein Parties' became involved with BCF for any edits to proposed agreements and/or to enforce any contract claims when a merchant became delinquent under the Deal documents.

28. Operational controls were exclusively managed by Sharf with oversight by, *inter alia*, Kahn and Alpart/HTI, each of whom were and are fiduciaries to BCF.

29. At the outset of BCF's formation, Alpart's/HTI's attorneys drafted all of the operational agreements of BCF, including the Limited Liability Company Agreement for BC Holdings, dated June 16, 2008.

30. Prior to the creation of BCF, Alpart's/HTI's attorneys drafted all of the lending agreements between Alpart/HTI and BCF.

31. On March 13, 2012, under the signature of Sharf, BCF filed for relief under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. section 101 *et. seq.*

32. On March 13, 2014, Plaintiff, BC Liquidating, LLC ("BC Liquidating"), filed a series of adversary proceeding complaints in this Court as "assignee and owner of any and all claims assigned to it by BCF" and "by each of the Investors" (the "BC Liquidating Complaint").

33. One of those "Investors" is Kahn who, as described above, purportedly executed an Assignment on behalf of BC Liquidating.

34. One of those "Investors" is Alpart who, as described above, purportedly executed an Assignment on behalf of BC Liquidating.

35. One of those "Investors" is HTI who, as described above, purportedly executed an Assignment on behalf of BC Liquidating.

36. In the BC Liquidating Complaint, BC Liquidating lumps together Weinstein and TWG with other named defendants, and seeks recovery based upon, *inter alia,* RICO, fraud, unjust enrichment and conversion.

37. The Weinstein Parties vehemently deny any liability or wrongdoing in connection with any services provided to BCF.

38. The Weinstein Parties specifically refute the assertion that Weinstein and/or TWG prepared or maintained "two sets of books with respect to transactions" as a complete fiction.

39. In fact, if anyone is responsible for the alleged losses suffered by BCF it would be an individual or entity with actual access to the books and records of the company, which excludes Weinstein and TWG.

40. Kahn had full and unfettered access to the books and records of BCF.

41. The BC Liquidating Complaint expressly acknowledges that "[b]etween April 1, 2010 and August 1, 2010, Kahn visited BCF's headquarters approximately one to two days per week to learn more about BCF's business..."

42. In fact, during some weeks Kahn came to BCF's offices three to four times; had his own cubicle at the office; and had access to BCF's computer records including, but not limited to each and every single financial transaction engaged in by BCF.

43. Neither of the Weinstein Parties had access to information like Kahn did.

44. Likewise, Kahn had access to Andrew Muhlstock, CPA and Muhlstock & Associates, CPA's, PLLC who allegedly prepared the supposedly "false" 2008 and 2009 audit reports Kahn ostensibly relied on in making the "Loans" as set forth in the BC Liquidating Complaint.

45. Neither Weinstein nor TWG prepared or participated in the preparation of any audit of BCF.

46. Further, Kahn had complete and unfettered access to Jeffrey Getzel, CPA and Getzel Schiff & Pesce, LLP, certified public accountants of BCF.

47. Neither Weinstein nor TWG ever had any access to either the books or records of BCF at any time during the course of their engagement.

48. Kahn had a BCF email address as well as management and control over all of the finances of BCF.

49. Alpart/HTI had full and unfettered access to the books and records of BCF.

50. O'Gorman had full and unfettered access to the books and records of BCF.

51. Weinstein and TWG relied upon the professional management of each of Sharf, Kahn and Alpart during the course of their engagement.

52. O'Gorman did not communicate with Weinstein and/or TWG.

53. Kahn's role and involvement in the development of BCF was so extensive that he held himself out as "a partner in the company with over 20 years of banking, credit and finance experience."

54. That the Weinstein Parties relied upon Kahn's experience, expertise and guidance.

55. By virtue of his knowing and active involvement in BCF's business and affairs at BCF, Kahn either knew the facts that were supposedly misrepresented to him or negligently failed to discover those facts.

56. Alpart and by extension HTI, are well versed in the field of lending and negotiated all terms with Sharf prior to the formation of the various entities.

57. Alpart/HTI caused their own counsel at their own expense to prepare all lending agreements between HTI and BCF.

58. Alpart/HTI caused their own counsel at their own expense to prepare all operating agreements between HTI and BCF.

59. Weinstein and TWG had no knowledge and could not have known how much Kahn allegedly loaned to BCF.

60. Weinstein and TWG had no knowledge and could not have known how much Alpart/HTI allegedly loaned to BCF.

61. Both Kahn and Alpart know that Weinstein and TWG had neither management nor control of any component of BCF.

62. Both Kahn and Alpart know that Weinstein and TWG were merely following the lawful instructions of an equity owner, chairman and chief operating officer.

63. Any claims made against Weinstein or TWG asserting any kind of management or control are knowingly false and intentional misrepresentations.

64. In bringing these claims against Weinstein and/or TWG, Kahn and Alpart are actively engage in a conspiracy to commit a fraud.

65. That the fraud and the conspiracy are established as follows:

   a. the formation of BCL and its finance board constituted an agreement by and between Kahn and Alpart;

   b. the commencement of the various adversary proceedings constitutes an overt act in furtherance of the agreement;

   c. each of Kahn and Alpart have intentionally participated in this action furthering the knowingly false claims; and

      d. the foregoing has resulted in injury to Weinstein and TWG.

66. BCL in the underlying adversary proceeding has asserted that Barry Sharf has intentionally engaged in certain acts of conversion and fraud.

67. Neither Weinstein nor TWG had any ability to know or even learn about any of the claims of BCL concerning Sharf.

68. To the extent that Sharf did engage in any act as set forth in the adversary proceeding, the same was without notice to or knowledge of neither Weinstein nor TWG or any of the attorneys or staff thereat.

69. Neither Kahn, Alpart/HTI nor O'Gorman provided any notice to Weinstein or TWG that Sharf was engaged in any of the activities set forth in the BC Funding Complaint.

70. Weinstein and TWG reasonably relied upon the statements of Sharf that the company was fiscally healthy.

71. Weinstein and TWG reasonably relied upon the statements of Kahn that the company was fiscally healthy.

72. Weinstein and TWG reasonably relied upon the statements and representations of Sharf that certain funds were actually Sharf's or his spouse's income to him for his use.

73. Weinstein and TWG reasonably relied upon the statements and representations by Sharf that any funds transmitted by Sharf to TWG were Sharf's or Sharf Family income, and that Sharf paid all appropriate State, Federal or other taxes upon the same.

74. Weinstein and TWG reasonably relied upon the statements of Sharf.

75. Sharf made numerous representations that upon a new round of financing, BCF would be in an even more improved financial position taking up additional market share.

76. Sharf exclusively negotiated all terms concerning this proposed financing.

77. Counsel for the proposed lender prepared all documents for this proposed financing.

78. In reliance upon representations by Sharf, Weinstein and TWG continued to render services for BCF in anticipation of payment.

79. Weinstein and TWG had no reason to disbelieve any statements by Sharf.

80. Neither Kahn, Alpart nor O'Gorman provided any information to Weinstein or TWG which contradicted any of Sharf's representations at the time the same were made.

81. Upon information and belief, each of Kahn, Alpart, HTI and O'Gorman had communications with counsel for the proposed lender and, together with Sharf, negotiated the terms of the refinance transaction.

## CAUSES OF ACTION

### COUNT I
(Contribution as to Kahn, Alpart, HTI and O'Gorman)

82. Third-Party Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

83. If Plaintiff, BC Liquidating, is entitled to recover damages on matters stated in the BC Liquidating Complaint regarding any act or omission by Weinstein and/or TWG, such recovery should be had from Kahn, Alpart, HTI, O'Gorman and Sharf, jointly and individually and severally.

84. By reason of the foregoing, Third-Party Defendants Kahn, Alpart/HTI and O'Gorman are obligated to make contribution to the Third-Party Plaintiffs to the extent the Weinstein Parties are made to pay BC Liquidating in excess over and above their equitable share, if any, and Kahn, Alpart/HTI, and O'Gorman are obligated to pay attorneys' fees, costs and disbursement incurred by the Third-Party Plaintiffs in connection with this matter.

## COUNT II
### (Negligence as to Kahn)

85.     The Third-Party Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

86.     Kahn had the academic background, the experience and the complete unrestricted access to review and understand the financial condition and development of BCF.

87.     By his own admission, Kahn spent in excess of twenty (20) hours per week on site at BCF access all of its books, records and financial information.

88.     Kahn made spreadsheets and projections addressing the fiscal health of BCF.

89.     Kahn did not forward these spreadsheets or projections to Weinstein or TWG.

90.     Kahn believed so deeply in the business plan of BCF that he encouraged friends of his to invest in BCF.

91.     Kahn believed so deeply in the business plan of BCF, that he personally guaranteed certain friends' loans to BCF.

92.     Weinstein and TWG grew to rely upon Kahn's on-site review of BCF's finances.

93.     It was Kahn's responsibility to review and oversee the finances of BCF. This included all funds received as well as advanced, and to alert the principals and service providers of any discrepancies noted.

94.     Although Kahn had unfettered access to all of the books, records and financial transactions of BCF, and the Weinstein Parties had none, Kahn failed to report any perceived or actual discrepancies or questions concerning the finances of BCF to Weinstein or TWG.

95.     Kahn had a fiduciary duty to BCF as well as to the Weinstein Parties to give alert as to any observed discrepancies.

96. Kahn failed to discharge his duties, resulting in damages as set forth in the underlying Complaint.

97. Kahn is currently a member of the finance committee for BCF's successor BC Liquidating, and thus is conflicted in his position.

98. To the extent that BCF has suffered any damages on account of Kahn's negligent failure to alert Weinstein or TWG of any alleged discrepancies, such damages offset any claims made by BC Liquidating against the Weinstein Parties.

## COUNT III
### (Negligence as to Alpart/HTI)

99. The Third-Party Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

100. Alpart and HTI each have the experience to participate in and the access to review and understand the financial condition and development of BCF.

101. Alpart/HTI were given unfettered access to all information involving BCF, when the Weinstein Parties had none.

102. Alpart/HTI reviewed the spreadsheets, calculations and projections made by Kahn.

103. In addition to Kahn, it was additionally the responsibility of Alpart/HTI, as an equity owner, to review and oversee the finances of BCF. This included review and oversight over all funds received as well as advanced, and to alert the principals and any service providers of any discrepancies noted.

104. Although Alpart/HTI had unfettered access to all of the books, records and financial transactions of BCF, and the Weinstein Parties had none, Alpart/HTI failed to report

any perceived or actual discrepancies or questions concerning the finances of BCF to Weinstein or TWG.

105.  Alpart/HTI had a fiduciary duty to BCF as well as to the Weinstein Parties to give alert as to any observed discrepancies.

106.  Alpart/HTI failed to discharge their duties, resulting in damages.

107.  Alpart is currently a member of the finance committee for BCF's successor BC Liquidating, and thus is conflicted in his position.

108.  Joseph Naggar was a member of the finance committee for BC Liquidating, but abruptly resigned his position from the same.

109.  To the extent that BCF has suffered any damages on account of Alpart/HTI's negligent failure to alert Weinstein or TWG of any alleged discrepancies, such damages offset any claims by the made by BC Liquidating against the Weinstein Parties.

## COUNT IV
### (Negligence as to O'Gorman)

110.  The Third-Party Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

111.  O'Gorman had the academic background, the experience and the access to review and understand the financial condition and development of BCF.

112.  From mid-2011 through early 2012, O'Gorman attended at the offices of BCF, reviewing the financial history and fiscal health of the Company.

113.  O'Gorman had unrestricted access to the books, records, finances and Deals of BCF, when Weinstein and TWG had none.

114.  Upon information and belief, O'Gorman spent full working days during his engagement, reviewing the finances of BCF.

13

115. At no time did O'Gorman report to the Weinstein Parties any of his findings concerning the fiscal health or financial records of BCF.

116. If O'Gorman did discover any financial issue concerning Sharf's management of BCF, O'Gorman did not reveal the same to the Weinstein Parties.

117. Although O'Gorman had unfettered access to all of the books, records and financial transactions of BCF, and the Weinstein Parties had none, O'Gorman failed to report any perceived or actual discrepancies or questions concerning the finances of BCF to Weinstein or TWG.

118. O'Gorman had a fiduciary duty to BCF as well as to the Weinstein Parties to give alert as to any observed discrepancies.

119. O'Gorman failed to discharge his duties, resulting in damages.

120. To the extent that BCF has suffered any damages on account of O'Gorman's negligent failure to alert Weinstein or TWG of any alleged discrepancies, such damages offset any claims made by BC Liquidating against the Weinstein Parties.

## PRAYER FOR RELIEF

**WHEREFORE**, to the extent the Third-Party Plaintiffs are found liable for any amount of damages in the BC Funding Litigation in connection with the claims in the BC Liquidating Complaint, Third-Party Plaintiffs are entitled to contribution and indemnification from each of the third party defendants Kahn, Alpart, HTI, and O'Gorman for any and all such amounts, plus attorneys' fees, costs and expenses and any further relief this Court deems just and proper.

Dated: East Meadow, New York
November 11, 2015


/s/ *Richard G. Gertler*
_____
Richard G. Gertler, Esq.
Gertler Law Group, LLC
90 Merrick Avenue, Suite 400
East Meadow, New York 11554
(516) 228-3553 (tel)
(516) 228-3396 (fax)
Attorneys for Third Party Plaintiffs
Lloyd J. Weinstein and
The Weinstein Group, P.C.